# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| SYLVANUS T. WILLIAMS | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:02-CR-115-TS |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

## OPINION AND ORDER

Before the Court are a series of motions and filings related to a writ of habeas corpus petition filed by the Petitioner, Sylvanus T. Williams. After affirmance of his convictions for possession with intent to distribute crack, possession with intent to distribute cocaine, and being a convicted felon in possession of a firearm, Sylvanus T. Williams petitioned for a writ of habeas corpus under 28 U.S.C. § 2255 [DE 187] on November 5, 2008. On January 20, 2009, the Petitioner filed a Motion to Amend [DE 192], which the Court granted in part, and denied in part. The Government filed its Response to the Petition [DE 195] on March 4, 2009. While the Petitioner never formally filed a reply, he submitted a series of affidavits to bolster his Petition, as well as a Motion to Expand the Record [DE 204] on June 4, 2009, in which he requested to add the affidavits to the record, and sought leave to file a Reply.

## BACKGROUND

On November 17, 2002, the Petitioner was apprehended at the Dolly Madison Thrift Bakery in Fort Wayne, Indiana. A store clerk had summoned the police because of Williams's suspicious behavior. The officers searched the bag of toaster pastries in Williams's possession and found a quantity of marijuana. The officers also saw a handgun through the window of Williams's Oldsmobile, and opened the door and took the gun out of concern for public safety.

Upon execution of a search warrant, officers discovered cocaine, a digital scale, and cash.

On November 25, 2002, a federal grand jury returned a three count Indictment against Williams. Count I charged Williams with possession with intent to distribute five grams or more of cocaine base, commonly known as "crack," in violation of 21 U.S.C. § 841(a)(1). Count II charged Williams with possession with intent to distribute less than five grams of cocaine, in violation of the same statute. Count III charged Williams with being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Following his initial appearance, Williams was appointed the first of his many court appointed counsel, Donald C. Swanson, Jr.

Williams' pretrial proceedings were marked by his continued efforts to file and refile motions to suppress, and by the zeal with which he disposed of one court appointed attorney after another. As this process is very relevant to the instant matter, it warrants a thorough recitation.

On February 14, 2003, Williams filed a Motion to Suppress Evidence [DE 21]. On December 9, 2003 (after District Court Judge William C. Lee found that Williams had standing to challenge the search), this Court issued an Order denying the Motion to Suppress [DE 45]. On January 12, 2004, Williams requested new counsel and the continuation of his trial date. The following day, William Lebrato was assigned as Williams' second court appointed counsel. Finding him unsatisfactory, Williams again requested new counsel on February 16, 2004. On March 19, 2004, H. Jay Stevens entered his appearance as Williams' third court appointed counsel. On May 16, 2004, Williams filed a Motion for Reconsideration re Order on Motion to Suppress [DE 71]. On July 22, 2004, the Court denied the Motion [DE 80]. Undeterred, Williams then filed a Second Motion to Suppress on October 5, 2004. On September 22, 2004, Williams

2

again requested new counsel. On October 7, 2004, Attorney Samuel Bolinger appeared as Williams' fourth court appointed counsel. Under new direction, Williams withdrew his Second Motion to Suppress and filed his Third Motion to Suppress [DE 109] on October 22. On November 17, the motion was denied. The Defendant went to trial on November 30, with Bolinger as his attorney.

On December 1, 2004, a jury found the Defendant guilty of all three counts of the Indictment. After a Motion to Withdraw filed by Bolinger, Robert Gevers, II, was assigned on December 17 as Williams' fifth court appointed counsel. On March 14, 2005, the Court conducted a sentencing hearing. The Court determined Williams to have a total offense level of 30 and a criminal history category of VI under the Federal Sentencing Guidelines, which suggested a guideline range of 168 to 210 months. On Count I, Williams was sentenced to 189 months imprisonment, to be followed by 8 years supervised release. On Count II, Williams was sentenced to 189 months imprisonment, to be followed by 6 years supervised release. On Count III, Williams was sentenced to 120 months imprisonment, to be followed by 3 years of supervised release, to be served concurrently.

The Defendant timely appealed, and filed a *pro se* Motion to Disqualify Counsel and be Appointed New Counsel, which the Seventh Circuit denied. However, upon consideration of Williams' Motion to Reconsider Motion to Disqualify Counsel, the Court of Appeals entered an order naming Francis C. Lipuma as Williams sixth, but not final, court appointed counsel. In his appellate brief, Williams raised three issues: (1) whether the District Court erred in determining that the *Terry* stop of the Petitioner was reasonable in scope and duration; (2) whether the district court erred by determining sentencing guidelines enhancements by a preponderance of the

evidence standard; and (3) whether the penalty provision for cocaine base is constitutional and reasonable. In a published opinion, *United States v. Williams*, 495 F.3d 810 (7th Cir. 2007), the Court of Appeals held that the police officers did not exceed the permissible scope of a *Terry* stop and the district court did not violate Williams' Fifth or Sixth Amendment rights by enhancing his sentence under advisory sentencing guidelines based on facts found by the district court by a preponderance of the evidence.

On May 30, 2008, Williams requested appointment of counsel for the purpose of pursuing re-sentencing under 18 U.S.C. § 3582. On June 4, 2008, attorney number seven, Thomas N. O'Malley, entered his appearance. On June 24, 2008, Williams filed a Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense [DE 180]. On July 29, the Court reduced Williams' sentence to 157 months imprisonment each on Counts I and II, to run concurrently.

As stated above, Williams petitioned for a writ of habeas corpus under 28 U.S.C. § 2255 [DE 187] on November 5, 2008. On January 20, 2009, the Petitioner filed a Motion to Amend [DE 192], which the Court granted in part, and denied in part. The Government filed its Response to the Petition [DE 195] on March 4, 2009. While the Petitioner never formally filed a reply, he submitted a series of affidavits to bolster his petition, as well as a Motion to Expand the Record [DE 204] on June 4, 2009, in which he requested to add the affidavits to the record, and sought leave to file a reply.

**STANDARD FOR A § 2255 MOTION**

"[R]elief under § 2255 is reserved for extraordinary situations." *Prewitt v. United States*,

83 F.3d 812, 816 (7th Cir. 1996). Motions to vacate a conviction or correct a sentence ask the court to grant an extraordinary remedy to one who has already had an opportunity of full process. *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006). Therefore, a § 2255 Petition will only be granted when the sentence has been imposed in violation of the Constitution or laws of the United States, the court that imposed the sentence was without jurisdiction, the sentence was in excess of the statutory maximum, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.

"A § 2255 is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. Untied States*, 55 F.3d 316, 319 (7th Cir. 1995). Therefore, three types of issues are procedurally barred in a § 2255 motion: (1) those that were raised on direct appeal, absent a showing of changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds). There are two exceptions to this procedural bar. First, a petitioner can raise a procedurally barred constitutional issue if he can show that there was cause for failing to raise an issue on appeal and that prejudice resulted therefrom. *Belford*, 975 F.2d at 313. Second, he can raise a barred constitutional issue if he can show that the Court's failure to hear the issue would result in a fundamental miscarriage of justice—which requires an actual showing of innocence. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). There is no cause and prejudice exception for non-constitutional errors that could have been raised on appeal but were not. *Arango-Alvarez v. United States*, 134 F.3d 888, 891 (7th Cir. 1998). Lastly, and significantly, ineffective assistance of counsel claims may always be raised in § 2255 cases. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

If the claims in a § 2255 motion fall within this narrow scope, then the Court will determine if the allegations warrant an evidentiary hearing. *See* 28 U.S.C. § 2255. If the petitioner alleges facts that, if true, would entitle him to relief, the court must grant an evidentiary hearing. *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). However, these allegations must be in the form of a sworn affidavit which shows that the petitioner "had actual proof of the allegations going beyond mere unsupported assertions." *Kafo*, 467 F.3d at 1067. A court is not bound to grant an evidentiary hearing when the petitioner's allegations are "vague, conclusory, or palpably incredible rather than detailed and specific." *Bruce*, 256 F.3d at 597.

**DISCUSSION**

The Petitioner contends that this Court should order a hearing and vacate his conviction based on the ineffective assistance of counsel, manifest in the following grounds:[1] (1) Attorney Bolinger's failure to preserve suppression issues by timely objection at trial; (2) Attorney Swanson's failure to provide effective counsel regarding a plea offer; (3) Attorney Swanson's failure to preserve suppression issues regarding the search of the Petitioner's vehicle; (4) Attorney Swanson's failure to utilize evidence obtained from private investigator Dan Baur; (5) Attorney Bolinger's failure to call Amanda Cunningham as a defense witness; (6) Attorney Bolinger's failure to have the Petitioner testify on his own behalf; (7) Attorney Swanson's encouragement that the Petitioner should take the case to trial; (8) Attorney Bolinger's failure to provide good advice regarding the Government's proposed plea agreement; (9) Attorney

---

[1] Though presented as twelve discrete grounds of ineffective assistance of counsel, some arguments in Williams' petition overlap. The Court lists Williams' grounds here in their entirety, but will consolidate the arguments during discussion, where appropriate.

Swanson's failure to fully advise him of the potential increase in sentence that would result from rejecting a plea agreement; (10) Attorney Bolinger deprived the Petitioner of constitutionally required advice during plea negotiations; (11) Attorney Swanson's failure in advising the Petitioner not to testify during his suppression hearing; and (12) Attorney Bolinger's failure to object to a Motion to Quash Subpoena filed by the Government.

The Government argues that the Petitioner's claims are procedurally barred and, in any event, do not succeed on their merits. This Discussion section will first address the procedural issues, and then will address the merits of the arguments.

### A. Procedural Issues [2]

In its Response, the Government categorically addresses each of Williams' arguments. In so doing, the Government begins each section with a variation of this sentence: "Williams is procedurally barred from raising these claims now, as he failed to raise them on direct appeal." The Government never fully briefs its position on this matter, which is perhaps just as well. The Court disagrees.

The general rule with habeas petitions is that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice. *United States v. Frady*, 456 U.S. 152, 167–68 (1982); *Bousley v. United States*, 523 U.S. 614, 621–22 (1998). However, the Supreme Court has resolutely held that ineffective assistance of counsel claims

---

[2] While not raised directly in the Petitioner's petition or the Government's response as a matter in issue, both documents mention, in passing, the appropriate statute of limitations to bring the habeas petition. The rule is that a one-year limitations period begins to run when time to file a Petition for Certiorari expires. *See* 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 524–25 (2003); *Latham v. United States*, 527 F.3d 651, 652 (7th Cir. 2008). In this case, Williams had until January 29, 2009, to file his petition, which was timely filed on October 27, 2008; a point on which the Government agrees.

*may* be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). In fact, this method is considered preferable to an attack on direct appeal, *id.* at 504–05, as the motion can be ruled on by the same district judge who presided at trial, affording her the "advantageous perspective for determining the effectiveness of counsel's conduct and whether any deficiencies were prejudicial." *Id.* at 506. Comporting with *Massaro*, the Court will use its advantageous position to rule on this Petition, which is not procedurally barred.

**B.     Merits**

    **1.     The Affidavits**

Before addressing the Petitioner's enumerated arguments, the Court notes a procedural anomaly in this § 2255 action. After the Government's Response on March 4, 2009, and in the weeks before and after the Petitioner's Motion to Expand the Record on June 4, 2009, the Petitioner submitted four separate affidavits (from himself, his brother, his mother, and his daughter's mother), all attesting to the inefficacy of his counsel. These were received between the dates of April 30, and June 16, 2009. As the affidavits were not attached to any specific motion, the Court determines that it can either treat these affidavits as a motion to amend the petition, or as a reply to the Government's Response. If it is the Petitioner's wish to treat the affidavits as an amendment, the Court points to its January 30 Order [DE 193] where it stated, "[T]his Court warns that this is the last supplement or amendment to the Petitioner's motion to vacate that he will be allowed. Any such further requests will be denied." If the Petitioner wishes these affidavits to form a sort of reply, he is time-barred under local rules, which require a reply

8

in seven days. N.D. Ind. L.R. 7.1(a).

However, the Court notes legitimate logistical difficulties that have prevented Williams from timely filing a reply. Since the Government filed its response, mail from the Court to Williams has twice been returned as undeliverable [DE 196, 199]. Through a series of letters, Williams has kept the Court apprised of his difficulty in submitting the affidavits to support his § 2255 Motion to Vacate. [DE 203, 200]. Furthermore, the affidavits in question serve as compelling evidence that significantly enhance the viability of Williams's Petition. The Court thus determines that the interests of justice require adding the affidavits to the record, and deems the four affidavits a Reply to the Government's Response.

### 2.     Ineffective Assistance of Counsel

In seeking to prove that his counsel rendered ineffective assistance, the Defendant "bears a heavy burden." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (citation omitted). To establish ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984); and (2) there is a reasonable probability that "but for counsel's unprofessional errors the result of the proceeding would have been different," *Id.* at 694. *See also Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) (applying *Strickland* test to claim that appellate counsel rendered ineffective assistance). "A failure to establish either prong results in a denial of the ineffective assistance of counsel claim." *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002) (citation omitted). The Petitioner alleges constitutional violations in his representation by his initial counsel, Donald C. Swanson, and his trial counsel, Samuel Bolinger. The Court will address

each, respectively.

### a. Donald C. Swanson and Failure to Plead Guilty

The Petitioner's grounds two, seven, and nine all implicate the first of his seven court appointed attorneys, Donald C. Swanson. The Petitioner alleges that Swanson encouraged him to reject the Government's plea offer, encouraged him to go to trial, and did not advise him of the possibly greater sentence he would receive if he did not plead guilty. Application of the *Strickland* standard disposes of these grounds. Again, to establish ineffective assistance of counsel, a petitioner must show that the ineffective assistance somehow prejudiced the result. In this case, the Court deems that no amount of ineffective counseling by Swanson could have possibly influenced the guilty verdict in Williams' case. Not only was Swanson not Williams' attorney at trial, there were two lawyers in-between Swanson and Bolinger. In other words, regardless of how ineffective Swanson's assistance may have been, Williams chose *not to take his advice*, evidenced by his seeking and procuring new counsel. That Williams asserts the same claims against Bolinger further cuts against his claims against Swanson. From Williams § 2255 motion, it appears that three lawyers later, the Government's deal was still available to him. By the time he chose to ultimately reject it, Swanson was a mere afterthought, whose assistance was totally irrelevant to the outcome.

### b. Donald C. Swanson and Failure to Adequately Litigate an Alleged Illegal Vehicle Search and Failure to Effectively Litigate Fourth Amendment Issues

In ground three, the Petitioner claims that Swanson failed to argue that Williams was not a recent occupant of the Oldsmobile and, as such, that his vehicle should not have been searched.

Ground four also relates to the suppression hearing, and claims that Swanson failed to use the evidence that Williams received from a private investigator, which would have changed the result of the suppression hearing. Specifically, the investigator found the following inconsistencies between videotape surveillance and officer testimony at the suppression hearing: (1) the videotape showed Williams being led away with his hands behind his back long before the officers claimed they had probable cause, and (2) the time from the police arriving at the store to the discovery of the marijuana was longer than the officers testified to.

Williams has made this argument before, and in front of this Court. In his Motion to Reconsider [DE 71] his first Motion to Suppress, Williams argued that Swanson had erred in his litigation of the suppression issue, especially in not using the information provided by the private investigation. Using the *Strickland* standard, this Court found that its decision would not have changed even had the investigator's findings been brought to its attention during the first motion.

Furthermore, on direct appeal, the Seventh Circuit found no evidence of Fourth Amendment violations. It stated, "there is ample evidence in the record to support a conclusion that the police had probable cause to arrest Williams for possession of a stolen firearm between four and ten minutes after their first contact with him." *Williams*, 495 F.3d at 816. It concluded: "In the totality of the circumstances, we believe that the officers acted diligently to investigate a suspicious story and that their decision to detain Williams was supported by reasonable suspicion throughout the encounter from the time that the clerk identified him to the time that the stolen gun was found." *Id.* At 817.

The Court now reiterates its earlier statement that "The Defendant should be assured that his previous attorney's strategic decision not to share the facts highlighted in his Motion to

11

Reconsider has not prejudiced him." [DE 71].

c. **Donald C. Swanson and Failure to Properly Advise Regarding Testifying at the Suppression Hearing**

Williams claims in ground eleven that Swanson provided ineffective assistance of counsel when he advised Williams not to testify on his own behalf at the suppression hearing. Again, under *Strickland*, one must prove that his attorney's performance "fell below an objective standard of reasonableness." Here, there are several factors that indicate that Swanson's strategic decision was eminently reasonable. As noted by the Government, Williams would have been subject to cross-examination at the hearing about the following: Williams's lie to the police officers that he did not own his Oldsmobile; and the drugs, digital scale, and cash found in the glove box. At best, Williams would have been questioned about facts that he would not have wanted to admit. At worst, he could have found himself obstructing justice, which would have increased his offense level for sentencing. The Court finds that Williams has not met the *Strickland* standard of ineffective assistance of counsel on this point.

d. **Samuel Bolinger and Failure to Preserve Suppression Issues by Timely Objection at Trial and Failure to Preserve Objection to Subpoena**

In ground one, Williams claims that Bolinger was ineffective in failing to object to evidence seized as a result of the aforementioned Fourth Amendment activity. In ground twelve, he claims that Bolinger was ineffective in failing to preserve his objection to the Government's Motion to Quash Subpoena. However, these claims are factually inaccurate. The docket reflects

no less than nine motions filed by counsel to suppress evidence seized. Similarly, Williams' counsel vigorously opposed the Government's Motion to Quash Subpoena. As such, counsel was not ineffective on these grounds.

### e. Samuel Bolinger and Failure to Call Defense Witness

In ground five, Williams claims that Bolinger failed to call the store clerk, Amanda Cunningham, or the private investigator, Dan Baur, as witnesses at his trial. He claims that both would have provided testimony that would have changed the outcome of the trial. Regarding Baur—Bolinger tried. After the Plaintiff's case, Bolinger announced his attention to have Baur testify. The Court considered the request and concluded that Baur's testimony was both irrelevant and hearsay. Baur's not testifying cannot be attributed to ineffective assistance of counsel. Regarding Cunningham—Williams does not indicate in his Motion what the testimony of Cunningham would have been had she taken the stand. However, it is not reasonable that her testimony could have altered the verdict. Cunningham's only role in the story of Sylvanus Williams' arrest was as the store clerk who summoned the police when Williams' behavior made her uncomfortable. Her testimony could not have altered the jury's perception of guilt or innocence as to the crimes charged. Bolinger was not ineffective for failure of these two witnesses to testify.

### f. Samuel Bolinger and Failure to Advise Williams to Testify at Trial

In ground six, Williams alleges that Bolinger told him not to worry about testifying, and that if he testified, the Court would have him charged with obstruction of justice. Again, a

decision of whether a defendant will testify in his own behalf is one of strategy. Here, it cannot be said that Bolinger's strategy "fell below an objective standard of reasonableness." As noted earlier, Williams' testifying would have led to questions about lies he told to the police officer and drugs found in his possession. Most significantly, the jury would almost surely have been invited to consider Williams' prior convictions, if only in considering his credibility. As the decision to have Williams not testify was thoroughly reasonable, Bolinger was not ineffective on these grounds.

**g.     Bolinger and Failure to Accept Plea Offer** [3]

In ground ten, Williams claims that Bolinger failed to advise him fully on whether or not to accept the Government's ten year conditional plea offer, and ignored Williams' request to plead guilty. Bolinger further failed to discuss the United States Sentencing guidelines with Williams. Ground eight alleges the same.

"The Sixth Amendment right to effective counsel extends to assistance rendered when deciding whether or not to reject a plea offer." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Toro v. Fairman*, 940 F.2d 1065, 1067 (7th Cir. 1991). A defendant must show through objective evidence that there existed a reasonable probability that a defendant would have accepted the proposed plea agreement absent defense counsel's advice. *Toro*, 940 F.2d at 1067.

In her affidavit, Ebony C. Roberson, the mother of Williams' child, alleges that on October 18, 2004, she asked Bolinger to discuss the Sentencing Guidelines with Williams, as

---

[3] It is in this section that the aforementioned affidavits are referenced. While the Court holds the affidavits not validly part of the record, they are included in the discussion notwithstanding the procedural bar.

14

Williams had told her he wished to plead guilty. Bolinger allegedly told her, "Don't worry about Sylvanus, just trust me, it doesn't matter whether Sylvanus pleads out or goes to trial, the judge can only give him ten years due to the Booker & Blakely rulings." On November 30, 2004, Roberson again made Bolinger aware that Williams wished to plead guilty, at which point Bolinger allegedly told her, "It's much too late for us to turn back now, we're going all the way." Williams' mother, Aldora Russell, alleges in her affidavit that she phoned Bolinger in October of 2004 to ask why Bolinger was not allowing Williams to plead guilty. He allegedly replied that if Sylvanus "was able to comprehend the Supreme Court rulings in the Booker & Blakely case then he should have known that he was only facing ten years no matter what he pleads." Marvin Patterson, Williams' brother, alleges that he asked Bolinger on October 18, 2004, how much jail time Williams would face if he went to trial and lost. Bolinger allegedly replied, "Due to the Booker and Blakely rulings, the Judge can only give Sylvanus ten years with or without a guilty plea."

Finally, the Court notes receipt of a six-page affidavit from the Petitioner himself, keeping in mind that a defendant's self-serving assertions that he wanted to plead guilty are insufficient to show prejudice. *United States v. Paters*, 159 F.3d 1043, 1047 (7th Cir. 1998). Williams alleges a series of conversations with Bolinger, in which he requested to have the Sentencing Guidelines explained to him, and repeatedly asserted his desire to plead guilty.

Again, self-serving statements are "insufficient to establish that, but for counsel's advice, there is a reasonable probability that he would have accepted the plea." *Toro*, 940 F.2d at 1068. However, Williams relies here on more than self-serving statements. The testimony of Roberson, Russell, and Patterson presents a narrative that has a desperate Williams begging his lawyer to

15

allow him to plead guilty, with his lawyer repeatedly ignoring his request. If deemed credible, the evidence would require granting Williams's petition. Therefore, Williams's claims on this ground do meet the *Bruce* standard of requiring an evidentiary hearing to determine their credibility.

## CONCLUSION

For the foregoing reasons, the Petitioner's Motion under 28 U.S.C. § 2255 to Vacate [DE 187] is STAYED in part and DENIED in part. The Motion is stayed as to ground ten, regarding the ineffective assistance of counsel claim against Samuel Bolinger on the Government's plea deal, pending an evidentiary hearing. This matter will be scheduled for separate hearing by further order. On all other grounds, the Motion is Denied. The Petitioner's Motion to Amend [DE 192] is DENIED. The Petitioner's Motion to Expand the Record [DE 204] is now MOOT.

SO ORDERED on September 22, 2009

                                             s/ Theresa L. Springmann
                                             THERESA L. SPRINGMANN
                                             UNITED STATES DISTRICT COURT