# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:02-CR-115-TS |
| | ) | |
| SYLVANUS T. WILLIAMS | ) | |

## OPINION AND ORDER

This matter is before the Court regarding a Motion to Vacate Under 28 U.S.C. § 2255 [DE 187] filed by the Defendant on October 27, 2008. For the reasons stated below, the Court will find in favor of the Government on the remaining issue in the Motion to Vacate, which will be denied in its entirety.

## BACKGROUND

The Defendant was apprehended at the Dolly Madison Thrift Bakery in Fort Wayne, Indiana on November 17, 2002. A store clerk had summoned the police because of Williams's suspicious behavior. The officers searched the bag of toaster pastries in Williams's possession and found a quantity of marijuana. The officers also saw a handgun through the window of Williams's Oldsmobile, and opened the door and removed the gun out of concern for public safety. Upon execution of a search warrant, officers discovered cocaine, a digital scale, and cash.

On November 25, 2002, a federal grand jury returned a three count Indictment against Williams. Count I charged Williams with possessing with intent to distribute five grams or more of cocaine base, commonly known as "crack," in violation of 21 U.S.C. § 841(a)(1). Count II charged Williams with possessing with intent to distribute less than five grams of cocaine, in violation of the same statute. Count III charged Williams with being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Following his initial appearance,

Williams was appointed the first of his many court appointed counsel, Donald C. Swanson, Jr.

Williams's pretrial proceedings were marked by his continued efforts to file and refile motions to suppress, and by the manner with which he dispatched one court appointed attorney after another. As the process is relevant to the instant matter, it warrants a recitation.

On February 14, 2003, Williams filed a Motion to Suppress Evidence [DE 21]. On December 9, 2003 (after District Court Judge William C. Lee found that Williams had standing to challenge the search), this Court issued an Order denying the Motion to Suppress [DE 45]. On January 12, 2004, Williams requested new counsel and the continuation of his trial date. The following day, William Lebrato was assigned as Williams's second court appointed counsel. Finding him unsatisfactory, Williams again requested new counsel on February 16, 2004. On March 19, 2004, H. Jay Stevens entered his appearance as Williams's third court appointed counsel. On May 16, 2004, Williams filed a Motion for Reconsideration re Order on Motion to Suppress [DE 71]. On July 22, 2004, the Court denied the Motion [DE 80]. Undeterred, Williams then filed a Second Motion to Suppress on October 5, 2004. On September 22, 2004, Williams again requested new counsel. On October 7, 2004, Attorney Samuel Bolinger appeared as Williams's fourth court appointed counsel. Under new direction, Williams withdrew his Second Motion to Suppress and filed his Third Motion to Suppress [DE 109] on October 22. On November 17, the Motion was denied. The Defendant went to trial on November 30 with Bolinger as his attorney.

On December 1, 2004, a jury found the Defendant guilty of all three counts of the Indictment. After Bolinger filed a Motion to Withdraw, Robert Gevers, II, was assigned on December 17 as Williams' fifth court appointed counsel. On March 14, 2005, the Court

2

conducted a sentencing hearing. The Court determined Williams to have a total offense level of 30 and a criminal history category of VI under the Federal Sentencing Guidelines, which suggested a guideline range of 168 to 210 months of imprisonment. On Count I, Williams was sentenced to 189 months imprisonment, to be followed by 8 years supervised release. On Count II, Williams was sentenced to 189 months of imprisonment, to be followed by 6 years supervised release. On Count III, Williams was sentenced to 120 months imprisonment, to be followed by 3 years of supervised release, to be served concurrently.

The Defendant timely appealed, and filed a *pro se* Motion to Disqualify Counsel and be Appointed New Counsel, which the Seventh Circuit denied. However, upon consideration of Williams' Motion to Reconsider Motion to Disqualify Counsel, the Court of Appeals entered an order naming Francis C. Lipuma as Williams sixth, but not final, court appointed counsel. In his appellate brief, Williams raised three issues: (1) whether the District Court erred in determining that the *Terry* stop of the Defendant was reasonable in scope and duration; (2) whether the district court erred by determining sentencing guidelines enhancements by a preponderance of the evidence standard; and (3) whether the penalty provision for cocaine base is constitutional and reasonable. In a published opinion, *United States v. Williams*, 495 F.3d 810 (7th Cir. 2007), the Court of Appeals denied the Defendant's appeal.

On May 30, 2008, Williams requested appointment of counsel for the purpose of pursuing re-sentencing under 18 U.S.C. § 3582. On June 4, 2008, attorney number seven, Thomas N. O'Malley, entered his appearance. On June 24, 2008, Williams filed a Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense [DE 180]. On July 29, the Court reduced Williams' sentence to 157 months imprisonment each on Counts I and II,

to run concurrently.

As stated above, Williams petitioned for a writ of habeas corpus under 28 U.S.C. § 2255 [DE 187] on October 27, 2008. On January 20, 2009, the Defendant filed a Motion to Amend [DE 192], which the Court granted in part, and denied in part. The Government filed its Response to the Petition [DE 195] on March 4, 2009. While the Defendant never formally filed a reply, he submitted a series of affidavits to bolster his Motion, as well as a Motion to Expand the Record [DE 204] on June 4, 2009, in which he requested to add the affidavits to the record, and sought leave to file a reply. On September 22, 2009, this Court issued an Opinion and Order [DE 207], in which it denied eleven of the Defendant's twelve discrete grounds on which he claimed ineffective assistance of counsel. The Court, however, found an issue of fact as to whether Bolinger provided ineffective assistance of counsel by failing to advise the Defendant fully on whether to accept the Government's offer of a plea agreement.

An evidentiary hearing was held on this narrow issue on January 28, 2010, and the Defendant and the Government both presented evidence. The Defendant testified on his own behalf, and averred that when he first met with Bolinger on October 18, 2004, Bolinger presented him with an offered plea agreement from the Government that would allow the Defendant to serve only ten years in prison. The Defendant stated that he advised Bolinger on that date that he wished to accept the agreement, but was told that he would receive a ten year sentence regardless of whether he went to trial or pleaded guilty because of recent Supreme Court rulings in *Blakely v. Washington* and *United States v. Booker*.[1] Therefore, the Defendant stated that he was led to believe that there was no incentive to plead guilty. The Defendant

---

[1] The Court notes the apparent anomaly created by this assertion, as *United States v. Booker* was not decided until January 12, 2005, after all of the conversations in question had already occurred. 543 U.S. 220 (2005).

testified that he told Bolinger twice more that he wished to accept the plea agreement, but that he was similarly rebuffed both times. He did not recall the precise dates of these conversations, but believed one of them to be in early November, and the other one to be during his trial.

For the Government, Bolinger testified that after being appointed to represent the Defendant, he reviewed the Indictment, the notice of penalties, and the offered plea agreement. Bolinger testified that he wrote a letter to the Defendant on October 20, 2004, which contained his calculations of the United States Sentencing Guidelines as applied to the case. He calculated that if Williams accepted a plea and received an acceptance of responsibility adjustment, he would face a sentencing range of 110-137 months. This letter was produced by Bolinger and admitted into evidence.

Bolinger also had admitted into evidence and testified to a letter he wrote to the Defendant on November 29, 2004, the eve of the Defendant's trial. This letter was a summary of a meeting the two had on November 26. Paragraph One of the letter states: "The Pleas [sic] Agreement: You once again indicated you did not want to sign it. You wanted to to go trial. I advised you strongly to take the plea." Paragraph Six states: "As discussed on several occasions, you have a very low chance of victory at trial. Almost none. You have no direct witnesses to support your position. All your motions have been denied. . . . A jury will believe the police, especially with your previous convictions." Bolinger concludes the letter by stating, "In conclusion, I highly recommend you take the plea. As discussed in the past, you face a minimum of ten (10) years and as much as ninety (90) years, if you go to trial and lose." The Defendant acknowledged reading this letter—although there was some inconsistency in the testimony as to when he received the letter, it is undisputed that he read it before the conclusion of his trial.

5

At the conclusion of the hearing, the Court ordered additional briefing, which was completed on May 11, 2010. The Motion to Vacate is now ripe for ruling.

## STANDARD FOR A § 2255 MOTION

"[R]elief under § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Motions to vacate a conviction or correct a sentence ask the court to grant an extraordinary remedy to one who has already had an opportunity of full process. *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006). Therefore, a § 2255 Motion will only be granted when the sentence has been imposed in violation of the Constitution or laws of the United States, the court that imposed the sentence was without jurisdiction, the sentence was in excess of the statutory maximum, or the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.

"A § 2255 is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. Untied States*, 55 F.3d 316, 319 (7th Cir. 1995). Therefore, three types of issues are procedurally barred in a § 2255 motion: (1) those that were raised on direct appeal, absent a showing of changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds). There are two exceptions to this procedural bar. First, a petitioner can raise a procedurally barred constitutional issue if he can show that there was cause for failing to raise an issue on appeal and that prejudice resulted therefrom. *Belford*, 975 F.2d at 313. Second, he can raise a barred constitutional issue if he can show that the Court's failure to hear the issue would result in a fundamental miscarriage

of justice—which requires an actual showing of innocence. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). There is no cause and prejudice exception for non-constitutional errors that could have been raised on appeal but were not. *Arango-Alvarez v. United States*, 134 F.3d 888, 891 (7th Cir. 1998). Lastly, and significantly, ineffective assistance of counsel claims may always be raised in § 2255 cases. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

## DISCUSSION

The Defendant contends that this Court should vacate his conviction based on the ineffective assistance of counsel, manifest in Attorney Bolinger's failure to provide good advice regarding the Government's proposed plea agreement. In seeking to prove that his counsel rendered ineffective assistance, the Defendant "bears a heavy burden." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (citation omitted). To establish ineffective assistance of counsel, a Defendant must show that: (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984); and (2) there is a reasonable probability that "but for counsel's unprofessional errors the result of the proceeding would have been different," *Id.* at 694. *See also Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) (applying *Strickland* test to claim that appellate counsel rendered ineffective assistance). "A failure to establish either prong results in a denial of the ineffective assistance of counsel claim." *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002) (citation omitted).

"The Sixth Amendment right to effective counsel extends to assistance rendered when deciding whether or not to reject a plea offer." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Toro v. Fairman*, 940 F.2d 1065, 1067 (7th Cir. 1991)). A defendant must

7

show through objective evidence that there existed a reasonable probability that he would have accepted the proposed plea agreement absent defense counsel's advice. *Toro*, 940 F.2d at 1067. A defendant's self-serving assertions that he wanted to plead guilty are insufficient to show prejudice. *United States v. Paters*, 159 F.3d 1043, 1047 (7th Cir. 1998). Additionally, self-serving statements are "insufficient to establish that, but for counsel's advice, there is a reasonable probability that he would have accepted the plea." *Toro*, 940 F.2d at 1068.

After consideration of the presented evidence, the Court finds that the Defendant has not established a reasonable probability that he would have accepted the proposed plea agreement absent Bolinger's advice. As memorialized by his November 29th letter, Bolinger advised the Defendant to accept the plea offer at their November 26 meeting. Bolinger also expressed to the Defendant that the overwhelming evidence was against him, and that he had no witnesses to support his theory of defense. Again, Bolinger concluded, "I highly recommend you take the plea. As discussed in the past, you face a minimum of ten (10) years and as many as ninety (90) years, if you go to trial and lose." Additionally, Bolinger testified that he never told the Defendant that any Supreme Court ruling would have capped his potential sentencing exposure at ten years. Finally, Bolinger testified that the Defendant never indicated to him that he wished to plead guilty, and was to the contrary, "adamant" about going to trial.[2]

Against this testimony, the Defendant only presents self-serving assertions that he had wished to plead guilty, but that Bolinger had talked him out of doing so. The Court notes that the

---

[2] The Court found Bolinger to be a highly credible witness. His testimony was consistent throughout the evidentiary hearing, and did not deviate from the affidavit that he submitted in anticipation of the hearing. He remained forthright during cross-examination, during which the Defendant's counsel was unable to find any material flaws or contradictions in the testimony. Additionally, much of what Bolinger averred was supported by two letters to the Defendant, which were admitted into the record. Finally the Court notes that Bolinger has appeared in approximately 25 federal criminal trials and has received Court Judicial Appointment training.

Defendant originally submitted affidavits of his brother, Marvin Patterson, his mother, Aldora Russell, and his daughter's mother, Ebony Roberson, as part of the pre-hearing briefing. Roberson's affidavit alleged that on October 18, 2004, Bolinger told her, "Don't worry about Sylvanus . . . it doesn't matter whether Sylvanus pleads out or goes to trial, the judge can only give him ten years due to the Booker & Blakely rulings." Russell's affidavit alleged that Bolinger told her that if she "was able to comprehend the Supreme Court rulings in the Booker & Blakely case then he should have known that he was only facing ten years no matter what he pleads." Patterson's affidavit alleged that Bolinger told him, "Due to the Booker and Blakely rulings, the Judge can only give Sylvanus ten years with or without a guilty plea."

These affidavits corroborated the heart of the Defendant's claim as to Bollinger, and provided him with the objective evidence necessary to overcome the insufficiency of mere self-serving statements. They were therefore central to the Court's decision to hold an evidentiary hearing on the issue. However, the Defendant's counsel advised the Court on the record before the hearing that all three of the affiants had declined to testify. Notably, the Court was advised that Russell was present in the courtroom, but wished not to testify.

In the absence of any other testimony, the Court is left with only the Defendant's statements, which are contradicted by Bolinger's credible testimony, contradicted by the letters admitted into evidence, and uncorroborated by objective evidence. The Court thus finds that the Defendant has not met his burden of showing that he would have accepted a plea agreement absent Bolinger's advice. Relief based on the remaining issue in the Motion to Vacate will thus be denied.

# CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), the applicant must make "a substantial showing of the denial of a constitutional right" by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation marks and citation omitted).

Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue. However, additional argument is not necessary here. In this Court's September 22, 2009, Opinion and Order [DE 207], it went through each of the Defendant's grounds and found that none, other than the instant issue, met the *Bruce* standard of "alleg[ing] facts that, if true, would entitle him to relief," and thus warranting an evidentiary hearing. *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). The Court adopts its analysis from that earlier Opinion and Order, and determines that for the same reasons it found that the grounds would not have entitled the Defendant to relief if true, reasonable jurists could not debate whether those issues could have been resolved in a different manner.  As to the instant issue, given the Court's favorable credibility determination as to Bolinger, and the fact that the Defendant withdrew objective testimony from this Court's consideration and relied only upon his own self-serving statements, jurists of reason could not find it debatable whether this petition could have been resolved in a different manner. Consequently, the Court will deny a certificate of appealability as to the Defendant's Motion.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion under 28 U.S.C. § 2255 to Vacate [DE 187] is DENIED. The Court also DENIES a certificate of appealability as to the Defendant's Motion. The Defendant may seek a certificate of appealability from the court of appeals under Federal Rule of Appellate Procedure 22.

SO ORDERED on June 23, 2010.

s/ Theresa L. Springmann  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT